The next case for consideration and argument is United States v. Velarde-Pavia. Mr. Clark, we're prepared to hear your argument when you're ready. Thank you, Your Honor. Good morning to the court and counsel, and may it please the court. Your Honor, I want to just start by summarizing briefly what I think are some despicable facts of this case that would warrant relief. As the court's aware, this was a drug case. It was kind of a garden variety drug case, except for the misconduct of Agent Juarez. On June 7th of 2018, Agent Juarez obtained four search warrants. Three of them were for houses in Roswell, New Mexico, and one of them was for a vehicle, a white Toyota truck, and for the defendant. So we had a total of four search warrants that were approved June 7th, and four days later on June 11th, agents executed all four warrants. The record was clear. They found nothing in the three houses, nothing of evidentiary value. They did find some five to eight grams of methamphetamine in the defendant's pocket, another roughly five ounces, I want to say 139 grams, in the truck, and a couple of firearms. And what is significant, and what I think separates this case from so many others, is these warrants were based primarily on the work of a confidential informant. The affidavit in support of the warrants kind of establishes this confidential informant's bona fides. Paragraphs three through six establish what the informant had done before, things like that. And later on, your honor, that was in June- Are you saying that the confidential informant's testimony or statements are not worthy of belief? That's not the issue, Judge, no. No, it's not, but that's what I gather from what you just said. Right, no, I'm getting to that, your honor. Okay. So later on, Judge, we know that in February 2019, Agent Whitehouse was investigated for some very unsavory things. I think the government was a little more generous in its details, he was investigated for having sex with a much younger man who may have been an informant, for drug use, for all of these things. And as a result of that investigation, other agents investigated and interviewed the confidential informant. And she made certain statements that, one, that she stated she may have started working for Agent Whitehouse in May or June of that year, she wasn't sure. And then there was a second statement that she may have started in April, May or June, she wasn't sure. So all of this goes to her credibility and reliability, those are the points you're making as you've made in your brief. Actually, I think maybe my brief wasn't clear to the court. That doesn't help us, counsel. I'm sorry? I say that doesn't help us if your brief doesn't state what your position is. Well, actually, I'll take that back. I think it did, your honor. She made a number of statements that didn't impeach her credibility, it impeached the information that Agent Whitehouse put into the warrant. Okay, because I want to talk about a couple of things and then I'll get back to her statements. The defense filed its sealed motion to suppress document 119, which is in the record. And what the defense did was, as exhibits to that, they attached the warrant in this case in 2018, and then the warrant from a 2017 unrelated case. And if you set them side by side, paragraphs three through six are virtually identical. They say the same things. What's wrong with that? He says three or more controlled buys, maybe that's what the local judge requires. When we read the CI's interview statements, it's plain that she has been involved in more than three, three or more, that's a truthful statement. And that she says she got paid $60 to $100 for each controlled buy and she made about $1,000. Okay, that is correct. Why do we care about that it's the same language? Because your honor, if in fact she started in June, she didn't start working for him till after that warrant was generated. When is she asked, when is she asked about what months she had worked, and she expresses some uncertainty about that, correct? That is correct, your honor. And we believe that this court and any other court should have been able to let us chase that issue down. She was uncertain. She was probably using drugs at the time. She was a known user. She stated later on, she didn't clean up till the following January. So there are all of these issues that she disclosed later on. Well, isn't her reliability and credibility corroborated by a controlled buy that she was not involved with after she gave information to law enforcement? So does all of this matter when you have something that significant in this case as evidence? You would have to assume that that information is correct. And we believe based on the control by didn't that control by prove it was correct. That is that he was dealing in methamphetamine, that he was using the truck, that he went to these other houses. I don't believe that. I believe your honor, you would have to believe agent what is to believe the rest of that, that what you're arguing or discussing your honor. And the point is, you've heard the phrase falsest and falsest and omnibus. If he's lying about one, he's lying about it all. And that's our position. We can clearly show I think our brief showed that he did the cut and paste in paragraphs three through six. And those were factual. He knew that was wrong because we believe had we been able to interview her, we could show she didn't start until June. She did not have time to do the things that agent what has put in his, in his affidavit. So if we can impeach those three paragraphs, three through six, then that cast credibility issues on the paragraph you're talking about, your honor, decontrolled by, because I'll note for the record, judge, it does not say that anyone actually saw him selling drugs from the truck. I don't think that's what the affidavit says. I've got it here. It says that she had done a controlled by, and she thought he'd used his truck. So, but these material representations aren't the only issues for us, your honor. The issues are also the thing. Again, does the, does the confidential informant matter at all in this case? Once you have the controlled by, don't you have solid evidence that there is support for a warrant? Well, your honor, then we have to look at the timing of this. Would that, just that paragraph alone, does that provide sufficient information to say that on this day, he's got drugs? Was there information to show that that allegation did not become stale? So I think your honor, that was kind of a, is staleness raised in your brief? I do not believe it is judge. You know, your honor, I apologize. It may be, I've been looking at other issues. Well, looking at paragraph six of the affidavit, it says within the past 72 hours, the informants witnessed a subject and then being the defendant to be selling methamphetamine from his vehicle. Your honor, I would, I would present to the court that that's almost the same as paragraph six in the previous one. In that 2017 case, it was within 72 hours, another defendant, they weren't selling out of the vehicle. They didn't say out of the vehicle, but they said, I think out of the house or some other place. So that's what really, that's the only language that separates that from the previous warrant. So even assuming that the court were to agree, okay, within 72 hours, the question is then the government put in its brief early on that he could have moved the drugs. He could have stopped selling. He could have ran out of drugs. I think a more temporal tie-in would have been better. So I understand the court's issues, but when we look at the overall, when we look at the omissions, what I'd like to do is talk about the things that Gerald Juarez omitted. Okay. In his warrant, he did not inform the magistrate that his confidential informant, again, may or may not have started working in June. I think that was a question any reasonable magistrate would have had. He did not inform the magistrate that the confidential informant didn't work for any other, she used the term narc, and she was clear she worked for him and him only. She did not inform the magistrate that she'd been busted for drugs and was trying to work that off, so to speak. She did not inform the magistrate of the amount of money she was paid, and surely he did not inform the magistrate that he had been sexually harassing her. So when we look at the two matching affidavits, so to speak, the material misrepresentations, and you combine those with the material omissions, Your Honor, and I'm going to argue kind of both points. I think that surely, well, the defense believes that surely and clearly meets the test for a Frank's hearing. Counsel, are you arguing first that we should create a ruling that says in an affidavit, if you use a prior paragraph that's identical to what you've used before, you know, as I see it, to save time, that that's a faulty affidavit then? Your Honor, it can be proven. It can be evidence of a faulty affidavit. I'm not asking for a blanket rule. In fact, this court in that Schwabel case warned against doing such things. This court warned against boilerplate affidavits. We may have warned against it, but is your argument that's what you want is a rule, a clear-cut rule, that if you use identical paragraphs in separate affidavits, that that vitiates that affidavit? No, Your Honor. What I'm asking the court to do is to engage in a case-by-case analysis to look at the allegations and decide if that meets or warrants further investigation. Okay, because I'm kind of arguing two motions here. The motion to compel the confidential informant, that was document 102, and I'll note for the court, Judge, I was fifth counsel in this case. There were four previous attorneys. These documents were filed well before I was in the case, so I played catch-up. We try not to shoot the messenger counsel. Well, thank you, Judge, but the issue was in that first motion is should we get an interview with the confidential informant, and the court used the Rovario analysis. Rovario is a 1957 Supreme Court case that gave us the analysis on when the government must disclose a confidential informant, and the general holding was that, I'm going to paraphrase, but that if the informant's testimony played a part of the transaction in question and is a part of the defense, the government must disclose. In this case, do you have that? The confidential informant was not involved in the charge that was brought. Is that not true? The confidential informant, Your Honor, was involved in procuring the warrant. The defendant, the only real defense, let's be honest, in this case was suppression. We know that the client was caught in the vehicle with the firearms and the guns, so there are factual defenses, which are very weak, but a procedural and a legal defense is unlawful warrant suppression, and when we look at Rovario, that's exactly what the district judge hung his hat on. He said, hey, she's not a part of this case. The government's not calling her as a witness, therefore, we don't need her, and I did brief that, that that wasn't the defense. We needed her to impeach Agent Juarez. Didn't the defendant know who the CI was, and should that matter? Your Honor, I don't recall if I got into it that far. I had 81 days to prepare for this trial from beginning to end, so I had a lot of things going on. Would it matter if he already knew, because there's certainly some details here that might give very good hints. Actually, Judge, you know what? If he'd have told me he knew who it was, I would have subpoenaed her. I'll make that, I would have filed a motion and issued a subpoena, but I need to focus on, I'm about out of time, on why I think it's important, because the defense was illegal search, and all I'm asking this court to do is give teeth to the Fourth Amendment. If this court were to sustain this conviction, then from here on out, any agent can simply misrepresent in an affidavit and then hide behind the Rovario case and say it's not a part of the case in chief, this is a preliminary matter. So I'm asking you to follow the rationale in Rovario. What is the misrepresentation in the affidavit? Your Honor, in paragraphs three through six, the timing involved, I'm about, may I have enough time to answer this question? Go ahead, go ahead. Your Honor, we cited paragraphs three through six, in that it states, a client met with a credible, reliable, confidential informant. Said informant has assisted a client and other law enforcement personnel on more than three separate occasions. There was a dispute as to whether or not she was actually reliable because she disclosed later on they had a bit of a disagreement, meaning Agent Juarez and the informant, he thought that she wasn't being truthful or disclosing everything. So he had some questions. She kind of explained it away, but those questions were there. So we believe that in his mind, he knew she wasn't reliable, but also it says clearly she assisted him and other law enforcement personnel. She made clear she never worked with anyone else. She worked with him alone. So those are two misrepresentations in paragraph three. As far as the paragraph four. There were other agents working with him while she was working with him too. And parsing that awfully fine on the grammar, aren't you? Well, Your Honor, but I think that you could, you could read it that way. But when she was working with him, it was at, I mean, he was, he was calling the shots. When I look at it, she made clear she worked for him and him alone. The other guys may have been around or ancillary, but Agent Juarez was calling the shots in this case. And then in paragraph four, Judge Briscoe, for your, for your opinion or for your answer, it continues to say that the informant had witnessed the sale of controlled substance on these three occasions while working for agents with the Metro County Narcotics Task Force. Again, the implication is kind of what you just Judge Phillips, she's working for others, but that's not what her statement said. She was never working for these other guys. She was working for him. And so I believe that, well, it says paragraph five, the informant has never provided false information. So she's associated with meth known users, and she's familiar with it. But if you look at that dispute about her candor and about how much she did show that impeaches paragraph five. So her words contradict his words. When we, if those would have been presented to the magistrate, along with the, the other material omissions, I think any reasonable magistrate would have called that agent in and said, Hey, what are you doing here? I don't think it would have met the test for probable cause on those facts. And he would have won suppression. I know I'm over my time. I'll answer any questions you may have, but you'll allow it. Thank you, Mr. Keeney. Good morning, your honors, Emil Keeney for the United States. May it please the court. What defendant has to prove to obtain a Frank's hearing is that there were false statements made by agent Juarez in the affidavit. And the call city has to be shown without resorting to, to speculation or conjecture. And I'm happy to go through each representation about which the defendant complains or to discuss whichever one you wish to discuss first. But with respect to the represent the use of preprinted language in the, in paragraphs one, I think three through six about which defendant complains with it. The use of that language doesn't demonstrate falsity. It merely demonstrates that the way an officer goes about establishing the reliability and format in these drug cases is very much the same in every case. They send out the informants to do purchases, to give information about drugs. And if that information is successful, that is shown to be true, then they can make these representations. There's nothing about that that shows any falsity. There's just merely speculation here that there have been untoward, but there needs to be actual evidence of falsity and not simply speculation. I think the most troubling allegation that the defendant has raised is the agent Juarez's misconduct by sending a text of a sexual nature to this informant. And that is reprehensible conduct. But it doesn't establish that anything in this affidavit is false. It doesn't establish that the information given by this informant to agent Juarez was false. And we know that because there was a controlled purchase about which agent Juarez wrote his report and which several other officers witnessed. The other allegation about working for one narc, that statement comes from interviews in which the confidential informant said two things. He or she said, I didn't work for any other narc, but I never met with agent Juarez alone, and always other officers were present. I think the district court did not err by reading those statements together and considering it as a statement that, yes, agent Juarez was the informant's handler and was primarily the one in charge of supervising the informant's work, but that there were always other officers present and involved in each of these operations that were conducted. The other allegation of falsity is the lack of information about payment. The omission of that information, the affidavit doesn't disclose that agent Juarez was paying the informant and the defendant argues that this is a material omission that should have been included. And I would say to that two things. The first is that even if that information had been included, it doesn't contradict or detract from anything else in the affidavit. And that's what this court's case in Stewart v. Don just says, a material omission has to negate probable cause in the affidavit. And that doesn't do so here. And I think it wouldn't come as a surprise to an experienced state court judge that informants aren't out doing informant work necessarily out of the goodness of their hearts or just an abstract desire to fight crime, but because they obtained benefits from it. And I don't think that would have the district court heard by thinking that wouldn't affect anything. With respect to the identification of the truck, I think the, well, this goes more to the sufficiency of the verify what the confidential informant was saying by because they conducted a control by and by because they verified that the truck in which the informant said she saw the defendant did in fact actually belong to the defendant. So I think these allegations of falsity are really nothing more either they're entirely speculative or they're just not material to a probable cause showing. Moving on to the disclosure of the confidential informant. If the first problem I think the defendant has is that this court has held that in order for a district court to even think about disclosing a confidential informant where a search warrant is involved, there has to be a frank showing made first. And that's because Roviaro only applies where the informant's information is material to the determination of guilt or innocence. As the Supreme Court said in McCrae that Roviaro does not extend necessarily to decisions about whether a confidential informant is guilty or not. So I think the defendant is entitled to a disclosure of an informant in the context of a suppression motion. And I don't think that there's any other probable cause existed. The other problem that the defendant has is that besides that there being no frank showing and besides there being no legal ground at least so far to think that he's entitled to disclosure of an informant in the context of a suppression motion is there's other sources from which if this court disagreed with us about all of that the court should direct the district court to first consider whether there are other sources by which the defendant could test the truth or falsity of the affidavit. And so what I'm thinking about there is with respect to the control by the officer of partisan report identifies four other officers and if that's all made up as the defendant is suggesting then he could call those four other officers to testify first and then the district court would be in a better position to determine whether that was true or false without having to disclose the confidential informant's identity. And we have to remember the disclosure of confidential informant's identity is a very serious thing in the drug world. It can lead to the death or serious injury of an informant. So that's why the standards are so high. And I totally get that in a usual case but this one we have this controlled by we have an arrest soon after. Was the position in the district court really that defendant didn't know who the CI was? Your Honor, I don't think that issue came up at all. I don't think we asserted that the government didn't assert that the defendant necessarily knew who the confidential informant was and it's just not an issue that came up. So it's not something I think this court has to resolve. With respect to the sufficiency of the we would just rest on our brief. Well, thank you, counsel, for your helpful arguments. The case is submitted and counsel are excused. Thank you, Your Honor. Thank you.